# Exhibit A

EFiled:  Jun 14 2024 04:11PM EDT
Transaction ID 73393333
Case No. 2024-0653-

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

|  |  |  |
|---|---|---|
| BOLD ST. PETERS, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. _____ |
| v. | ) | |
| | ) | |
| BOLD ON BOULEVARD LLC, RCG | ) | |
| BOLD GP LLC, BOLD APARTMENTS | ) | |
| LLC, RCG BOLD 1 LLC, RCG BOLD 2 | ) | |
| LLC, RCG BOLD 3 LLC, RCG BOLD 4 | ) | |
| LLC, RCG BOLD 5 LLC, and | ) | |
| NACHMAN Y. TEREN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## VERIFIED COMPLAINT FOR DECLARATORY RELIEF, DAMAGES AND OTHER EQUITABLE RELIEF

Plaintiff, Bold St. Peters, L.P. ("Bold St. Peters" or the "PE Member"), by and through its undersigned counsel, files this Verified Complaint and states as follows:

### INTRODUCTION

1. By this action, Plaintiff Bold St. Peters seeks declaratory relief as to the removal of the manager of Defendant Bold on Boulevard LLC, equitable relief and money damages sustained in connection with its investment in a 272-unit apartment complex located in St. Peters, Missouri. In particular, Bold St. Peters made an investment in Defendant Bold on Boulevard LLC, pursuant to a series of agreements

outlined more fully below, which limited liability company was to hold full and complete title in the apartment complex. Bold St. Peters made its investment in the company with the express understanding that only it and one other entity, Defendant RCG Bold GP LLC, would hold any membership or equity interests in the company and, by extension, the apartment complex.

2.      Within six (6) months of its investment, however, Bold St. Peters learned that Defendant RCG Bold GP LLC had purportedly transferred ownership interests in the apartment complex and/or company without the prior written consent of Bold St. Peters, which was required to properly effectuate any such transfer under the company's operating agreement. Bold St. Peters's demands to unwind that transaction have gone unanswered. Moreover, Bold St. Peters has recently learned that the bank that provided financing for the underlying transaction in the apartment complex has declared events of default, in part, resulting from the poor operational performance of the property, which is currently managed by Defendant RCG Bold GP LLC and its affiliates.

3.      As a result of this and other conduct, Bold St. Peters brings this action pursuant to 6 *Del. C.* § 18-110 to obtain a declaration that Plaintiff Bold St. Peters properly exercised its change in control rights and, as such, is validly the Managing

Member of Bold on Boulevard LLC, and seeks other equitable relief and monetary damages to protect its investment.

## PARTIES

4.      Plaintiff Bold St. Peters is a Delaware limited partnership with a principal place of business of 1301 E. Washington Street, Suite 100, Indianapolis, Indiana 46202.

5.      Defendant Bold on Boulevard LLC ("Bold on Boulevard" or the "Company") is a Delaware limited liability company with a principal place of business in Indianapolis, Indiana. PE Member is a member of the Company. Bold on Boulevard is governed by an Operating Agreement dated December 30, 2022 (the "Operating Agreement").

6.      Defendant RCG Bold GP LLC ("RCG Bold GP" or the "Common Member") is a New Jersey limited liability company with a principal place of business in Lakewood, New Jersey. Common Member is a member and the Managing Member of the Company. PE Member and Common Member are collectively referred to herein as the "Members".

7.      Defendants Bold Apartments LLC ("Bold Apartments"), RCG Bold 1 LLC ("RCG Bold 1"), RCG Bold 2 LLC ("RCG Bold 2"), RCG Bold 3 LLC ("RCG Bold 3"), RCG Bold 4 LLC ("RCG Bold 4"), and RCG Bold 5 LLC ("RCG Bold

5") are each Delaware limited liability companies and are collectively referred to herein as the "TIC Owners". Upon information and belief, Common Member is the Managing Member of each of the TIC Owners.

8.      Defendant Nachman Y. Teren ("Teren") an individual with an address of 5 Raven Lane, Lakewood, New Jersey 08701. Defendant Teren is the Managing Member of the Common Member and, upon information and belief, also holds a majority of the membership interests in the Common Member.

## VENUE AND JURISDICTION

9.      This Court has subject matter jurisdiction over this action pursuant to 10 *Del. C.* § 341, 6 *Del. C.* § 18-111 and 6 *Del. C.* § 2708.

10.     This Court has personal jurisdiction over Bold on Boulevard and the TIC Owners because each are Delaware limited liability companies formed under the laws of Delaware.

11.     This Court has personal jurisdiction over Defendant RCG Bold GP pursuant to 6 *Del. C.* § 18-109 because it served as Managing Member of the Company and each of the TIC Owners. This Court also has personal jurisdiction over Defendant RCG Bold GP pursuant to 10 *Del. C.* § 3104(c)(1) because, among other things, it transacted business and caused injury in Delaware.

4

12.     This Court has personal jurisdiction over Defendant Teren because he consented to non-exclusive jurisdiction in the state and federal courts located in Wilmington, Delaware, as discussed more fully below.

13.     Moreover, Bold on Boulevard and each of its Members, including the Common Member and PE Member, consented to the jurisdiction and venue of this Court pursuant to Section 20.16 of the Operating Agreement. Bold on Boulevard, the Common Member and the PE Member further agreed to the application of Delaware law to govern this dispute.

14.     Further, venue in this Court is proper pursuant to the Defendants' other agreements to venue in this jurisdiction, as explained more fully below.

## FACTUAL BACKGROUND[1]

### Acquisition of the Property

15.     From approximately late 2019 through the summer of 2022, Bold St. Peters and affiliated entities constructed a 272-unit apartment complex with extensive amenities and common areas located at 1100 Saint Peters Centre Boulevard, St. Peters, Missouri 63376 (the "Property").

---

[1]     All capitalized terms not otherwise defined shall have the same definition given to them from the referenced exhibit attached hereto.

16.     On or about April 12, 2022, Bold St. Peters, as Seller, and Silverstone Management, LLC ("Silverstone"), as Purchaser, entered into an Agreement of Purchase and Sale, which was amended on several occasions (collectively, the "Sale Agreement") for the Property. Pursuant to the Sale Agreement, Silverstone was to pay $74,750,000.00 as consideration for the Property and the transaction was to close on or before June 10, 2022. The purchase price was later reduced and the closing date extended per amendments to the Sale Agreement. Silverstone was the original proposed purchaser before, upon information and belief, the Sale Agreement was assigned to the Company.

17.     On May 11, 2022, RCG Bold GP, as Common Member,[2] and Bold St. Peters, as PE Member, formed the Company, Bold on Boulevard, to acquire the Property rather than the Property being acquired solely by Silverstone. On December 30, 2022, Common Member and PE Member finalized and executed the Operating Agreement to govern the Company and the Company's acquisition of the Property.

18.     The Members formed the Company to purchase and manage the Property, with Bold St. Peters, as PE Member, maintaining a $15,000,000.00 preferred equity position in the Company (the "Investment"). Under the initial Sale Agreement with Silverstone, ownership of the Property was to be sold to Silverstone

---

[2]     Silverstone is an affiliate of Common Member.

in full, with Bold St. Peters not retaining any ownership stake in the Property. Because Silverstone was unable to finance the full purchase price for the Property, the Members agreed to acquire the Property jointly through the Company.

19.     The Company's acquisition of the Property closed on December 30, 2022.

20.     In connection with the Company's acquisition of the Property, the parties and other third parties entered into a series of agreements as discussed more fully herein.

21.     Silverstone currently serves as the Manager of the Property pursuant to a Management Agreement dated December 29, 2022.

22.     To govern their investment in the Property and the operations of the Company post-acquisition, on December 30, 2022, the Members executed the Operating Agreement. Pursuant to the Operating Agreement, Common Member is designated as Managing Member of the Company, and PE Member is identified as the Preferred Equity Member, or PE Member, of the Company.  A true and accurate copy of the Operating Agreement is attached hereto as **Exhibit 1**.

23.     On December 29, 2022, the Company entered into a Business Loan Agreement (the "Loan Agreement") in the face amount of $38,750,000.00 with Old National Bank (the "Lender") to finance a portion of the acquisition price of the

7

Property. Bold St. Peters's Investment in the Property was made to bridge the difference between the ultimate purchase price for the Property and the amount borrowed from the Lender, after taking into consideration the Common Member's investment in the Company. Defendant Teren signed the Loan Agreement on behalf of Common Member, as Managing Member of the Company. The Company granted the Lender a first priority lien against the Property to secure the indebtedness.

24.     The Loan Agreement was accompanied by a Term Promissory Note in the same face amount as the Loan Agreement. The Term Promissory Note established January 1, 2025 as the maturity date of the indebtedness under the Loan Agreement and the Term Promissory Note (collectively, the "Maturity Date").

25.     Pursuant to a Commercial Guaranty dated December 29, 2022 (the "Commercial Guaranty"), Defendant Teren guaranteed the repayment of the Term Promissory Note and all other obligations of the Company to the Lender. A true and accurate copy of the Commercial Guaranty is attached hereto as **Exhibit 2**.

26.     Pursuant to Section 13 of the Commercial Guaranty, an Event of Default under the Loan Agreement shall be deemed to be an Event of Default under the Commercial Guaranty.

27.    Defendant Teren executed and delivered another Guaranty dated December 30, 2022 (the "Equity Guaranty") to, and in favor of, Bold St. Peters. A true and accurate copy of the Equity Guaranty is attached hereto as **Exhibit 3**.

28.    Defendant Teren executed and delivered the Equity Guaranty to induce Bold St. Peters to make the Investment and to guarantee certain obligations of the Company and the Common Member.

29.    Pursuant to the Equity Guaranty, Defendant Teren personally guaranteed certain payment and performance obligations and any losses suffered from any acts or omissions of the Common Member or Teren, as guarantor, including, *inter alia*, (a) any material incorrectness of any representation or warranty made by the Company or Teren to the PE Member in connection with the investment in the Property; or (b) any Transfer made without the consent of Bold St. Peters.

30.    Pursuant Sections 8.10 and 8.11 of the Equity Guaranty, Defendant Teren agreed to the application of Delaware law for any disputes arising therefrom and further consented to non-exclusive jurisdiction and venue in the state and federal courts located in Wilmington, Delaware.

31.    Common Member, as "Pledgor", executed a Guaranty, Pledge and Security Agreement dated December 30, 2022 and delivered it to Bold St. Peters, as "Secured Party" (the "Common Member Equity Pledge", and together with the

9

Operating Agreement and Equity Guaranty, the "Investment Documents"). A true and accurate copy of the Common Member Equity Pledge is attached hereto as **Exhibit 4**.

32.    The Common Member entered into the Common Member Equity Pledge to secure the PE Member's Investment in the Company and Common Member's obligations under the Operating Agreement.

33.    Bold St. Peters's $15,000,000.00 investment into the Company, the Investment, is valued at approximately $17,700,000.00 as of June 30, 2024 when accounting for returns.

34.    Pursuant to the Common Member Equity Pledge, the Common Member agreed to, *inter alia*: (a) assign and grant to Bold St. Peters a first-priority security interest in all of Common Member's ownership interests in the Company; and (b) guarantee certain obligations of the Company and the Common Member.

35.    The Common Member executed and delivered the Common Member Equity Pledge to the PE Member to induce the Bold St. Peters to make the Investment and to guarantee certain obligations of the Company and the Common Member.

36.    Pursuant to Section 14.11 of the Common Member Equity Pledge, Bold St. Peters and Common Member agreed that:

TH[E] AGREEMENT AND THE OBLIGATIONS ARISING [T]HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF DELAWARE APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA. TO THE FULLEST EXTENT PERMITTED BY LAW, PLEDGOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT.

37.     Section 14.12 of the Common Member Equity Pledge provides that the

Common Member:

CONSENTS TO THE NON-EXCLUSIVE JURISDICTION AND VENUE OF THE STATE AND FEDERAL COURTS LOCATED IN WILMINGTON, DELAWARE, FOR THE ADJUDICATION OF ANY LITIGATION RELATING TO THIS AGREEMENT OR ANY OF THE INVESTMENT DOCUMENTS. TO THE FULLEST EXTENT PERMITTED BY LAW, PLEDGOR WAIVES ANY CLAIM THAT SUCH COURTS ARE NOT A CONVENIENT FORUM FOR ADJUDICATING SUCH LITIGATION.

<u>The Dispute</u>

38.     During the course of negotiations for the Company's acquisition of the

Property, Common Member requested that ownership of the Property be shared

among the Company, the Common Member, and other potential investors in the

Common Member, as tenants in common, to facilitate favorable tax treatment for a

portion of Common Member's investment in the Company. This so-called "TIC"

structure, if implemented, would have made the Company, the Common Member,

11

and the investors in Common Member, owners of the Property as tenants-in-common.

39.    Bold St. Peters declined Common Member's request to structure ownership of the Property as a TIC, and Common Member accepted Bold St. Peters's decision in this regard. Indeed, in an email dated December 19, 2022, counsel for the Common Member reported to Bold St. Peters that the Common Member "can close without the TICs."

40.    As a result, on December 30, 2022, the Property was purchased by the Company as the sole owner of the Property. The Company's exclusive ownership of the Property was properly reflected in the organizational documents attached to the Operating Agreement and certain disclosures made by Common Member in the Operating Agreement. In particular, pursuant to the Operating Agreement, the "Company will be the sole owner of and have good, marketable and insurable fee simple in and to the Property, free and clear of all Liens, other than the Mortgage Loan and the Permitted Encumbrances. . . . Except for the Mortgage Lender, no other Person has a legal, contractual, or equitable right to acquire any ownership interest or Lien in the Property." The only members in the Company at Closing pursuant to the Operating Agreement were the Common Member and Bold St. Peters.

41.     In May 2023, after the Company purchased the Property, Bold St. Peters discovered that Common Member had, unbeknownst to Bold St. Peters, secretly caused the Company to enter into a Nominee Agreement dated December 30, 2022 (the "Nominee Agreement"), the apparent purpose of which was to facilitate the favorable tax treatment scheme, and which attempted to falsely portray that ownership of the Property as if it had been structured as a TIC. PE Member learned of the execution and implementation of the Nominee Agreement (the "TIC Restructure Transaction") in 2023, during the course of discussions relating to the tax filings for the Company for calendar year 2022.

42.     Indeed, on or about May 25, 2023, Common Member provided an Organizational Chart for the Company (the "Second Organizational Chart") that differed from the Organizational Chart included in the Operating Agreement. The Second Organizational Chart disclosed that the Common Member had owners that were not disclosed to PE Member, including RCG Bold 1, RCG Bold 2, RCG Bold 3, RCG Bold 4, and RCG Bold 5, which collectively purportedly held 30.547% of the ownership interests the Company. The Second Organization Chart also reflected that Bold St. Peters no longer held an ownership interest in the Company, but rather, Bold St. Peters held an ownership interest in a new entity, RCG Bold SM LLC, which itself was a subsidiary of Common Member.

13

43.     At the same time, Common Member provided Bold St. Peters with a copy of a draft of the Company's Form 1065 U.S. Return of Partnership for the tax year 2022 (the "May Tax Filing"). The May Tax Filing reflected a new ownership structure whereby the Property was purportedly owned by another company, RCG Bold SM LLC, and Bold St. Peters had an equity position in a portion of that entity's membership interests. The ownership structure reflected in the May Tax Filing, however, conflicted with the Operating Agreement as well as the Second Organizational Chart. To add to the confusion, approximately two (2) weeks later, Common Member circulated another draft Form 1065 U.S. Return of Partnership, but this version now showed that the Company had three (3) members, the Common Member and Bold St. Peters, as well as RCG Bold SM LLC.

44.     To the extent any such transfer was attempted by the Common Member, it would have constituted a Transfer under the Operating Agreement, which requires the prior written consent of Bold St. Peters. No such consent was given by Bold St. Peters at any time.

45.     In particular, on or about June 29, 2023, PE Member made an informal request that Common Member provide Bold St. Peters with a copy of the Nominee Agreement, but Common Member refused to provide it.

14

46.     On July 13, 2023, Bold St. Peters made a formal request, through counsel, for a copy of the Nominee Agreement.

47.     Ultimately, on July 26, 2023, Common Member provided Bold St. Peters with a redacted copy of the Nominee Agreement. It was not until October 25, 2023 that Common Member provided Bold St. Peters with an unredacted copy of the Nominee Agreement.

48.     The Nominee Agreement was executed by and between the Company, Bold Apartments, RCG Bold 1, RCG Bold 2, RCG Bold 3, RCG Bold 4, and RCG Bold 5. Defendant Teren, as Managing Member of RCG Bold GP, executed the Nominee Agreement on behalf of the Company as its Managing Member. Defendant Teren, as Managing Member of RCP Gold GP, also executed the Nominee Agreement of on behalf of Bold Apartments, RCG Bold 1, RCG Bold 2, RCG Bold 3, RCG Bold 4, and RCG Bold 5 as their Managing Member. The Nominee Agreement defines Bold Apartments, RCG Bold 1, RCG Bold 2, RCG Bold 3, RCG Bold 4, and RCG Bold 5 collectively as the "Owners". A true and accurate copy of the Nominee Agreement is attached hereto as **Exhibit 5**.

49.     The Nominee Agreement purports to represent an investment in excess of $24,000,000.00 by Bold Apartments, RCG Bold 1, RCG Bold 2, RCG Bold 3, RCG Bold 4, and RCG Bold 5, collectively, in the Property. The rights and

15

obligations purportedly created by the Nominee Agreement conflict with the Investment Documents in numerous ways.

50.     For instance, pursuant to Section 1 of the Nominee Agreement, the TIC Owners designated and appointed the Company "as its agent and Nominee for the purpose of holding title to the Replacement Property for the benefit of [TIC] Owners, as undivided, tenants-in-common in accordance with their respective TIC Percentages . . . and thereafter acting with respect to the Replacement Property pursuant to Owners' specific authorization[.]" The Nominee Agreement defines the Property located at 1100 Saint Peters Centre Boulevard, St. Peters, Missouri 63376 as the Replacement Property.

51.     Likewise, Section 2 of the Nominee Agreement purportedly provides that the Company, as Nominee, is "to hold legal title to the Replacement Property for the benefit of Owners."

52.     On August 10, 2023, Bold St. Peters notified Common Member that the Nominee Agreement constituted an event of default under the Operating Agreement.

53.     Bold St. Peters sent Common Member a letter dated October 5, 2023 demanding verification of the existence of the Nominee Agreement and a true and accurate copy thereof.

54.     Bold St. Peters sent Common Member another letter dated November 17, 2023 demanding, *inter alia*,  Common Member's acceptance of terms which, if accepted and performed, would have satisfied Bold St. Peters's concerns related to the Nominee Agreement and the transactions related thereto and allowed the Parties to continue their joint venture notwithstanding Common Member's breach of the Operating Agreement and related agreements.

55.     As explained more fully herein, Bold St. Peters has made repeated and persistent requests that Common Member unwind the TIC Restructure Transaction.

56.     Despite repeated representations by Common Member and its counsel, including as recently as of June 10, 2024, that Common Member was in the process of unwinding the TIC Restructure Transaction, no such unwinding of the TIC Restructure Transaction has been consummated.

<u>Notice of Default & Change in Control</u>

57.     On January 9, 2024, Bold St. Peters issued a notice of default, redemption demand, demand for payment and demand on guaranty to the Common Member and/or Teren. Bold St. Peters declared that the Common Member's execution and performance under the Nominee Agreement constituted an event of default under the Operating Agreement (the "<u>January 2024 Notice of Default</u>"). As such, Bold St. Peters provided notice of that event of default, demanded that the

17

Common Member cure the event of default, and accelerated the Mandatory Redemption date and demanded that the Company make a Full Redemption Distribution to Bold St. Peters.

58.     Bold St. Peters further demanded payment of all costs and expenses incurred by Bold St. Peters and demanded that the Teren, as guarantor, indemnify, defend and hold harmless Bold St. Peters from any and all claims and losses, including, *inter alia*, losses suffered by Bold St. Peters with respect to the Investment, the Carve-Out Obligations and the Springing Obligations.

59.     Common Member did not cure the event of default described in the January 2024 Notice of Default.

60.     As such, on April 8, 2024, Bold St. Peters notified the Company that Bold St. Peters was accelerating the Mandatory Redemption Date and demanded that the Company make a Full Redemption Distribution as permitted by Section 5.4 of the Operating Agreement (the "April 8, 2024 Demand Correspondence"). A true and accurate copy of the April 8, 2024 Demand Correspondence is attached hereto as **Exhibit 6**.

61.     The April 8, 2024 Demand Correspondence further notified Defendant Teren that the Common Member's execution of and performance under the Nominee Agreement constituted a Springing Obligation under the Equity Guaranty that

18

triggered Defendant Teren's guarantee of the Company's payment to Bold St. Peters of the Full Redemption Distribution. The April 8, 2024 Demand Correspondence also advised that Common Member's failure to cooperate with, and/or Defendant Teren's interference with, the Change of Control which was the subject of separate correspondence of the same date, shall be considered a separate and additional right for Bold St. Peters's acceleration of the Mandatory Redemption Date and demand that the Company make a Full Redemption Distribution.

62.     Also on April 8, 2024, PE Member delivered a Notice to the Common Member, pursuant to Section 7.2(c)(ii) of the Operating Agreement, that the Bold St. Peters was removing the Common Member as Managing Member of the Company in accordance with Section 7.2(b) of the Operating Agreement and appointing Bold St. Peters as the Managing Member (the "Change in Control Notice"). A true and accurate copy of the Change in Control Notice is attached hereto as **Exhibit 7**.

63.     Bold St. Peters further declared that it expected Common Member to provide written consent to cooperate with this change in control by April 12, 2024, to otherwise "cooperate in good faith in [the] orderly transition of management and Control of the Company from Common Member to PE Member", and otherwise

comply with the obligations imposed on Common Member following a Change in Control under Section 7.3 of the Operating Agreement.

64.     Rather than comply with its contractual obligations, on April 15, 2024, Common Member issued a demand to Bold St. Peters that it, among other things, cease and desist any efforts to effectuate a change in control for the Company.

65.     To date, Common Member has taken no steps to effectuate or permit the change in control demanded by Bold St. Peters pursuant to the terms of the Operating Agreement.

Lender Declares Default Under Loan Agreement

66.     On May 9, 2024, Lender, Old National Bank, through counsel, issued to the Company a formal notice of default under the Loan Agreement (the "Lender Default Notice") as a result of the Company's failure to satisfy the Interest Only Debt Service Coverage Ratio covenant set forth in Section 5.01(n)(ii) of the Loan Agreement, as tested on June 30, 2023 and September 30, 2023 (the "Lender Default"). As of the date of the Lender Default Notice, the Company owed Lender a total amount of $38,814,757.37 in principal and interest. A true and accurate copy of the Lender Default Notice is attached hereto as **Exhibit 8**.

67.     The Lender Default constitutes an Event of Default under Section 15.1(d) of the Operating Agreement.

68.     As such, on or about May 23, 2024, PE Member issued a supplemental notice of default to Common Member resulting from the Lender Default ("Supplemental Notice of Default"). A true and accurate copy of the Supplemental Notice of Default is attached hereto as **Exhibit 9**.

69.     The Lender Default also constitutes an Event of Default under Section 13 of the Commercial Guaranty.

70.     Moreover, pursuant to Section 9.2(f) of the Operating Agreement, the Common Member and the Company shall not modify the Loan Agreement without PE Member's prior written consent and approval. Notwithstanding this prohibition, during a teleconference between representatives of Common Member and Bold St. Peters held on May 16, 2024, Common Member indicated to Bold St. Peters that Common Member had been in discussions with the Lender regarding a proposed modification and/or amendment of the Loan Agreement, but had not informed Bold St. Peter's of such discussions in contravention of the Operating Agreement.

## COUNT I
### Declaratory Judgment / Injunctive Relief (6 *Del. C.* § 18-110)
### (Against Company & Common Member)

71.     Bold St. Peters realleges and restates the foregoing paragraphs as if fully stated herein.

72.     Section 18-110 provides that, "[u]pon application of any member or manager, the Court of Chancery may hear and determine the validity of any admission, election, appointment, removal or resignation of a manager of a limited liability company, and the right of any person to become or continue to be a manager of a limited liability company[.]"

73.     Under the Operating Agreement, a Removal Event of Default requires the Common Member to effect the removal of Common Member as manager and to appoint PE Member as manager of the Company in its place. Ex. 1 § 7.2(b). A Removal Event of Default includes, *inter alia*:

> (a)     The Common Member, as Managing Member undertakes an action constituting a Major Decision without complying with the terms of Section 7.1 of this Agreement;
>
> \* \* \*
>
> (d)     An event of default has occurred under the Mortgage Loan or Mortgage Loan Documents.

Ex. 1, Removal Event of Default at p. 13, § 15.1(a), (d).

74.     The Lender Default was a Removal Event of Default that required the Common Member to effect a Change in Control.

75.     The Common Member's decision to enter into the Nominee Agreement and effect the TIC Restructure Transaction was also a Removal Event of Default.

22

76.     A Removal Event of Default occurs when the Common Member undertakes a Major Decision without obtaining the written consent of the PE Member. Ex. 1 § 15.1(a). A Major Decision includes, as relevant here:

(i)     Any transfer, sale, pledge, assignment, lease, conveyance or other transfer of all or any portion of the Property, except in immediate connection with a Full Redemption Distribution;

* * *

(iii)   Incur any cost not expressed in an Annual Budget, [or] enter into any contract not contemplated by an Annual Budget . . . ;

(iv)    Amend, modify, alter, change, assign, extend, terminate or cancel any contract or agreement related to the Property . . . ;

* * *

(xiii)  Make any accounting decision which may have a material and disproportionate impact on PE Member;

* * *

(xxiii) Merge, consolidate, or restructure the Company;

* * *

(xxv)   Amend [the Operating Agreement.]

Ex. 1 § 7.7(b).

77.     The TIC Restructure Transaction and/or Nominee Agreement constitute a Major Decision because:

a.  It is a transfer, sale, pledge, assignment, lease, conveyance or other transfer of all or any portion of the Property under Section 7.7(b)(i) of the Operating Agreement because the Common Member granted a legal interest in the Property to the new members.

23

b.  It is a contract not contemplated by the Annual Budget under Section 7.7(b)(iii) of the Operating Agreement;

c.  It is a contract or agreement related to the Property under Section 7.7(b)(iv) of the Operating Agreement;

d.  It constitutes an accounting decision with a material and disproportionate impact on PE Member under Section 7.7(b)(xiii) of the Operating Agreement because the tenancy-in-common requires proportionate sharing of the incomes produced by the Property, a principle in conflict with Article 5 of the Operating Agreement;

e.  It constitutes a restructuring of the Company under Section 7.7(b)(xxiii) of the Operating Agreement because new members were admitted;

f.  It constitutes an amendment to the Operating Agreement under Section 7.7(b)(xxv) of the Operating Agreement because the Nominee Agreement changes Article 5 and Article 7 of the Operating Agreement.

78.  Common Member did not obtain Bold St. Peters's written consent to enter into the TIC Restructure Transaction or the Nominee Agreement—a Major Decision—which failure constitutes a Removal Event of Default.

79.  Accordingly, Bold St. Peters properly exercised its change in control rights under the Operating Agreement by and through the Change in Control Notice.

80.  As such, Bold St. Peters is currently the proper Managing Member of the Company.

81.  Because Common Member was validly removed as the Managing Member of the Company on or about April 8, 2024, any action taken by Common

24

Member on behalf of the Company after that date is void and of no legal effect unless expressly ratified by the Company.

82.    The parties have a direct, substantial and present judiciable interest concerning their respective rights and obligations under the Operating Agreement.

83.    There exists an actual controversy between and among the parties and a declaration of their rights and responsibilities would terminate the uncertainty or controversy giving rise to certain aspects of this proceeding.

84.    Plaintiff Bold St. Peters desires and requires a judicial determination that (i) Bold St. Peters is entitled to remove and replace Common Member as the Managing Member of the Company; (ii) Bold St. Peters validly removed Common Member as the Managing Member of the Company on April 8, 2024; (iii) Bold St. Peters validly appointed itself as the Managing Member of the Company; and (iv) any action taken by Common Member on behalf of the Company as Managing Member following its removal on April 8, 2024, is void and of no legal effect.

### COUNT II
**Breach of Contract – Operating Agreement**
**(Against Company & Common Member)**

85.    Bold St. Peters realleges and restates the foregoing paragraphs as if fully stated herein.

86.     Common Member's execution and implementation of the Nominee Agreement and performance of transactions related thereto, the TIC Restructure Transaction, constitute Common Member's breach of the Operating Agreement as follows:

a.  Section 7.7(b)(xxiii) of the Operating Agreement prohibits merging, consolidating, or restructuring the Company without PE Member's consent. The TIC Restructure Transaction constitutes a reorganization of the Company not approved by the PE Member.

b.  Section 7.7(b)(xxv) of the Operating Agreement prohibits the unilateral amendment of the Operating Agreement. Common Member's admission of new members to the Company and giving effect to changes to Article 5 (distributions) or Article 7 (management) of the Operating Agreement that would be required to give effect to the TIC Restructure Transaction constitutes Common Member's unilateral amendment of the Operating Agreement.

c.  Section 7.7(b)(xiii) of the Operating Agreement prohibits making any accounting decision which may have a material and disproportionate impact on PE Member. Section 1 of the Nominee Agreement could be relied upon, to the detriment of the PE Member, to cause the Company to maintain its books and records with respect to the Property in a manner contrary to the requirements of the Operating Agreement. This is because the Nominee Agreement requires beneficial ownership of the Property to be held as if a tenancy-in-common existed. Any tenancy-in-common creates undivided interests in a property that require proportionate sharing of the incomes produced by the Property according to the undivided interests held (in this case by the Company and Owners). If incomes from the Property were shared according to the undivided interests contemplated by the Nominee Agreement, that would directly conflict with the distribution provision contained in Article 5 of the Operating Agreement.

26

d.  Section 8.2(b) of the Operating Agreement states that Common
    Member owns 100% of the Pledged Interests which are evidenced by
    the Common Equity Certificate. Section 1 of the Nominee Agreement
    and the Restructure conflict with this representation because the
    Common Member's attempt to create the tenancy-in-common adds the
    Owners and RCG Bold SM LLC as Common Member interest holders.

e.  Section 8.2(c) of the Operating Agreement states that no person owns
    any direct interest in the Common Member or any right to acquire a
    direct interest in Common Member. Section 2 of the Nominee
    Agreement purports to create and then delegate to the TIC Owners the
    authority to hold legal title to the Company, in contravention of the
    Operating Agreement.

f.  Section 8.2(d) of the Operating Agreement states that Common
    Member's Organizational Documents provided to PE Member are in
    full force and effect. The Common Member's attempt to include RCG
    Bold SM LLC as a Member of the Company violates this
    representation.

g.  Section 8.2(e) of the Operating Agreement states that the
    Organizational Chart attached to the Operating Agreement contains a
    true, correct and complete description of the direct and indirect
    ownership of the Property, the Company, Common Member and the
    Common Equity Interest. The Second Org Chart directly conflicts with
    the Organizational Chart.

h.  Section 9.1(j) of the Operating Agreement prohibits the Common
    member from executing any Material Agreement that contains terms
    that restrict or limit Company's right to transfer the Property or  that
    grants any Person a right to consent or withhold consent to a direct or
    indirect change in ownership or Control of Company.  Section 1 of the
    Nominee Agreement violates the Operating Agreement by re-
    characterizing the Company's ownership of the Property as an
    undivided tenants-in-common interest.

i.  Section 9.2(k) of the Operating Agreement prohibits Common Member
    from entering into any agreement with an affiliate other than its own

27

Organizational Documents and the Investment Documents to which it is a party. Upon information and belief, the Owners are the Common Member's affiliates, in violation of the Operating Agreement.

j.  Section 13.1 of the Operating Agreement provides that the "Common Member shall  not . . . cause, permit, suffer, or consent to a Transfer. Common Member acknowledges and agrees that the current ownership of the Property and the Common Equity Interest and the current composition of Common Member, the Company and Guarantor was a material inducement to PE Member in the making of the Investment."

The term "Transfer" is, in turn, defined as any sale, conveyance, encumbrance, pledge, assignment, hypothecation, granting of a security interest in, or transfer of (1) any portion of the Property; or (2) any direct or indirect ownership or beneficial interest in the Common Member, the Company, the Common Equity Interest, or any corporation, partnership, LLC, trust or other entity owning, directly or indirectly, any interest in Common Member or any indemnitor or guarantor of obligations under the Operating Agreement or the Mortgage Loan.

87.  As a result of the TIC Restructure Transaction and/or Nominee Agreement, PE Member made a demand for a change in control pursuant to Sections 7.1, 7.2 and 7.4 of the Operating Agreement.

88.  Moreover, pursuant to Section 9.3(d) of the Operating Agreement, PE Member is entitled to implement a change in control as a result of the Lender Default.

89.  To date, however, despite proper notice and service of the Change in Control Notice, Common Member has refused to effectuate a change in control.

28

90.     Common Member's failure to effectuate a change in control is a further breach of Section 7.3 of the Operating Agreement.

91.     As a result of the foregoing breaches of the Operating Agreement by the Common Member, PE Member has been damaged.

**COUNT III**
**Declaratory Judgement**
**(Against All Defendants)**

92.     Bold St. Peters realleges and restates the foregoing paragraphs as if fully stated herein.

93.     The parties have a direct, substantial and present judiciable interest concerning their respective rights and obligations under the Operating Agreement.

94.     There exists an actual controversy between and among the parties and a declaration of their rights and responsibilities would terminate the uncertainty or controversy giving rise to certain aspects of this proceeding.

95.     The Company and Common Member entered into the TIC Restructure Transaction and related Nominee Agreement.

96.     Common Member and the Company lacked authority under the Operating Agreement to execute and implement the TIC Restructure Transaction and related Nominee Agreement without the written consent of Bold St. Peters.

97.     Common Member and the Company did not obtain the Bold St. Peters's written consent prior to execution and implementation of the TIC Restructure Transaction and related Nominee Agreement.

98.     Bold St. Peters does not consent to the execution and implementation of the TIC Restructure Transaction and related Nominee Agreement.

99.     The Company and Common Member's execution and implementation of the TIC Restructure Transaction and related Nominee Agreement constitute a breach of the Operating Agreement.

100.    All persons or entities that have an actual, present and adverse interest in the subject matter of this action are parties or are identified in this Counterclaim.

<u>COUNT IV</u>
**Breach of Fiduciary Duty**
**(Against Common Member)**

101.    Bold St. Peters realleges and restates the foregoing paragraphs as if fully stated herein.

102.    Common Member, as Managing Member of the Company, owes fiduciary duties to the other members of the Company, including Bold St. Peters.

103.    These fiduciary duties include the duties of care and loyalty.

104.    Common Member knowingly violated the fiduciary duties it owed to PE Member by entering into the TIC Restructure Transaction, by concealing the TIC

Restructure Transaction from Bold St. Peters, and by refusing to unwind the TIC Restructure Transaction after Bold St. Peters learned of its existence.

105.   Based on the parties' negotiations and on the terms of the Operating Agreement and the Investment Documents, the Common Member was aware at all times relevant hereto that:

  a.  Bold St. Peters would not have consented to the TIC Restructure Transaction;

  b.  That Bold St. Peters entered into the Investment Documents with the understanding and agreement that the Bold St. Peters and the Common Member were the only members of the Company; and

  c.  Bold St. Peters entered into the Operating Agreement and related Investment Documents upon Common Member's express inducement, representation, and warranty that it would not consent to or cause a Transfer.

106.   By entering into the Nominee Agreement and effectuating the TIC Restructure Transaction without consulting the Bold St. Peters—in violation of the terms of the Operating Agreement—Common Member placed its self-interests above those of Bold St. Peters. In so doing, Common Member used its position as Managing Member for its own pecuniary gain and to the detriment of Bold St. Peters.

107.   Common Member further violated the fiduciary duties it owed to Bold St. Peters by failing to operate the Company in an informed and reasonable basis, which led to, among other things, the Lender Default.

31

## COUNT V
### Fraud
### (Against Common Member and Teren)

108.   Bold St. Peters realleges and restates the foregoing paragraphs as if fully stated herein.

109.   As expressed by the plain terms of the Operating Agreement and the parties' course of dealing, as a material inducement to enter into the Operating Agreement and related Investment Documents, Common Member and Teren represented to Bold St. Peters that they would not effectuate a Transfer.

110.   Indeed, in an email dated December 19, 2022, counsel for the Common Member ant Teren stated that they would close on the acquisition of the Property "without the TICs."

111.   Defendant Teren made similar representations to Bold St. Peters and its representatives in December 2022 that he and Common Member would close on the acquisition of the Property without a TIC structure.

112.   Defendants Common Member and Teren always intended to effectuate a Transfer after Bold St. Peters agreed to enter into the Operating Agreement and related Investment Documents. Their false representation was intended to cause Bold St. Peters to enter into the Operating Agreement and related Investment Documents.

113.   As expressed by the plain terms of the Operating Agreement and the parties' course of dealing, Bold St. Peters justifiably relied on the representations of Common Member and Teren that no Transfer would be permitted in entering to the Operating Agreement.

114.   If Common Member and Teren had not made the representation to Bold St. Peters that no Transfer would be permitted, Bold St. Peters would never have entered into the Operating Agreement and related Investment Documents.

115.   Common Member and Teren entered into the Nominee Agreement and effectuated the TIC Restructure Transaction without consulting the Bold St. Peters.

116.   Common Member and Teren actively concealed from Bold St. Peters that they had entered into the Nominee Agreement and effectuated the TIC Restructure Transaction, and once Bold St. Peters learned of the TIC Restructure Transaction, Common Member and Teren concealed, for months, information relating to that transaction.

117.   As a result of Bold St. Peters's reliance on Common Member's and Teren's false representations and concealment, Bold St. Peters has been damaged.

<u>**COUNT VI**</u>
**Fraudulent Concealment**
**(Against Common Member and Teren)**

118.   Bold St. Peters realleges and restates the foregoing paragraphs as if fully stated herein.

119.   As expressed by the plain terms of the Operating Agreement and the parties' course of dealing, as a material inducement to enter into the Operating Agreement and related Investment Documents, Common Member and Teren represented to Bold St. Peters that they would not effectuate a Transfer.

120.   Defendants Common Member and Teren always intended to effectuate a Transfer after Bold St. Peters agreed to enter into the Operating Agreement and related Investment Documents. Their false representation was intended to cause Bold St. Peters to enter into the Operating Agreement and related Investment Documents.

121.   As expressed by the plain terms of the Operating Agreement and the parties' course of dealing, Bold St. Peters justifiably relied on the representations of Common Member and Teren that no Transfer would be permitted in entering to the Operating Agreement.

34

122.   If Common Member and Teren had not made the representation to PE Member that no Transfer would be permitted, Bold St. Peters would never have entered into the Operating Agreement and related Investment Documents.

123.   Common Member and Teren entered into the Nominee Agreement and effectuated the TIC Restructure Transaction without consulting the Bold St. Peters.

124.   Common Member and Teren actively concealed from Bold St. Peters that they had entered into the Nominee Agreement and effectuated the TIC Restructure Transaction, and once Bold St. Peters learned of the TIC Restructure Transaction, Common Member and Teren concealed, for months, information relating to that transaction.

125.   As a result of Bold St. Peters's reliance on Common Member's and Teren's false representations and concealment, PE Member has been damaged.

**COUNT VII**
**Equitable Fraud/Negligent Misrepresentation**
**(Against Common Member and Teren)**

126.   Bold St. Peters realleges and restates the foregoing paragraphs as if fully stated herein.

127.   As expressed by the plain terms of the Operating Agreement and the parties' course of dealing, as a material inducement to enter into the Operating

Agreement and related Investment Documents, Common Member and Teren represented to Bold St. Peters that they would not effectuate a Transfer.

128.   Defendants Common Member and Teren intended to cause Bold St. Peters to enter into the Operating Agreement and related Investment Documents based on the representation that they would not enter into a Transfer.

129.   As expressed by the plain terms of the Operating Agreement and the parties' course of dealing, Bold St. Peters justifiably relied on the representations of Common Member and Teren that no Transfer would be permitted in entering to the Operating Agreement.

130.   If Common Member and Teren had not made the representation to Bold St. Peters that no Transfer would be permitted, Bold St. Peters would never have entered into the Operating Agreement and related Investment Documents.

131.   Common Member and Teren entered into the Nominee Agreement and effectuated the TIC Restructure Transaction without consulting the Bold St. Peters.

132.   Common Member and Teren actively concealed from Bold St. Peters that they had entered into the Nominee Agreement and effectuated the TIC Restructure Transaction, and once Bold St. Peters learned of the TIC Restructure Transaction, Common Member and Teren concealed, for months, information relating to that transaction.

36

133.   Common Member and Teren, as managers and members of the Company, owed Bold St. Peters a fiduciary duty and other equitable duties to ensure it did not make knowingly or negligent false representations to Bold St. Peters.

134.   As a result of Bold St. Peters's reliance on Common Member's and Teren's false representations and concealment, Bold St. Peters has been damaged.

### COUNT VIII
### Intentional Misrepresentation
### (Against Common Member and Teren)

135.   Bold St. Peters realleges and restates the foregoing paragraphs as if fully stated herein.

136.   As expressed by the plain terms of the Operating Agreement and the parties' course of dealing, as a material inducement to enter into the Operating Agreement and related Investment Documents, Common Member and Teren represented to Bold St. Peters that they would not effectuate a Transfer.

137.   Defendants Common Member and Teren always intended to effectuate a Transfer after Bold St. Peters agreed to enter into the Operating Agreement and related Investment Documents. Their false representation was intended to cause Bold St. Peters to enter into the Operating Agreement and related Investment Documents.

138.   As expressed by the plain terms of the Operating Agreement and the parties' course of dealing, Bold St. Peters justifiably relied on the representations of Common Member and Teren that no Transfer would be permitted in entering to the Operating Agreement.

139.   If Common Member and Teren had not made the representation to Bold St. Peters that no Transfer would be permitted, Bold St. Peters would never have entered into the Operating Agreement and related Investment Documents.

140.   Common Member and Teren entered into the Nominee Agreement and effectuated the TIC Restructure Transaction without consulting the Bold St. Peters.

141.   Common Member and Teren actively concealed from Bold St. Peters that they had entered into the Nominee Agreement and effectuated the TIC Restructure Transaction, and once Bold St. Peters learned of the TIC Restructure Transaction, Common Member and Teren concealed, for months, information relating to that transaction.

142.   As a result of Bold St. Peters's reliance on Common Member's and Teren's false representations and concealment, Bold St. Peters has been damaged.

## COUNT IX
**Breach of Implied Covenant of Good Faith and Fair Dealing
(Against Common Member and Teren)**

143.   Bold St. Peters realleges and restates the foregoing paragraphs as if fully stated herein.

144.   As expressed by the plain terms of the Operating Agreement and the parties' course of dealing, as a material inducement to enter into the Operating Agreement and related Investment Documents, Common Member represented to Bold St. Peters that it would not effectuate a Transfer.

145.   Defendants Common Member and Teren always intended to effectuate a Transfer after Bold St. Peters agreed to enter into the Operating Agreement and related Investment Documents. Their false representation was intended to cause Bold St. Peters to enter into the Operating Agreement and related Investment Documents.

146.   Bold St. Peters justifiably relied on the representations of Common Member and Teren that the Common Member and Bold St. Peters would be the only members of the Company in entering into the Operating Agreement. If Common Member and Teren had not made the representation to Bold St. Peters, Bold St. Peters would never have entered into the Operating Agreement and related Investment Documents.

147. By entering into the Nominee Agreement and TIC Restructure Transaction, Common Member acted arbitrarily and unreasonably and frustrated the fruits of the bargain that Bold St. Peters expected—namely, that Common Member would not enter into a Transfer.

148. After Bold St. Peters invoked its rights under the Operating Agreement and sought to accomplish a Change in Control and to receive a Full Redemption Distribution, Common Member arbitrarily refused. The Operating Agreement and related Investment Documents contemplates only one of two outcomes for Bold St. Peters: either Common Member does not effect a Transfer or, if Common does effect a Transfer, Bold St. Peters may force a Change in Control and Full Redemption Distribution. Common Member's arbitrary and unreasonable actions have frustrated PE Member's expected fruits of the bargain, leaving the Company with Common Member still as Managing Member; the TIC Restructure Transaction still in place; and PE Member without receipt of the Full Redemption Distribution.

### **COUNT X**
**Breach of Contract – Equity Guaranty**
**(Against Defendant Teren)**

149. Bold St. Peters realleges and restates the foregoing paragraphs as if fully stated herein.

40

150.   Section 1.2 of the Operating Agreement requires Defendant Teren, as Guarantor, to defend, indemnify and hold harmless Bold St. Peters from claims, demands, causes of action, losses and liabilities incurred by Bold St. Peters , to the extent arising from any acts or omissions of Common Member.

151.   Section 1.3 of the Equity Guaranty obligates Defendant Teren, as Guarantor, to guarantee to Bold St. Peters payment of the Full Redemption Distribution upon the occurrence of: (i) a Transfer that under the terms of the Investment Documents requires consent of Bold St. Peters occurs or exists without consent of PE Member; (ii) any failure by Common Member to tender unconditionally and immediately to Bold St. Peters all of the rights of Managing Member of the Company when required by Section 7.2 of the Operating Agreement; and (iii) any action by Guarantor, Common Member that interferes with the exercise by PE Member of dominion and control over the Company.

152.   As described herein, events of default have occurred under the Operating Agreement and Equity Guaranty that cause Defendant Teren's obligations under such agreements to mature and become immediately due and payable.

153.   Bold St. Peters has made demand upon Defendant Teren, as Guarantor, to pay to Bold St/ Peters such amounts as are due under the foregoing.

154.   Despite demand, Defendant Teren, as Guarantor, has failed and refused to pay amounts due to Bold St. Peters under the Operating Agreement and Equity Guaranty.

## COUNT XI
### Breach of Contract – Common Member Equity Pledge
### (Against Defendant Common Member)

155.   Bold St. Peters realleges and restates the foregoing paragraphs as if fully stated herein.

156.   Common Member, pursuant to Section 2.1 of the Common Member Equity Pledge, assigned, pledged, conveyed and transferred to Bold St. Peters a first priority assignment of and continuing security interested in its ownership interests in the Company.

157.   An Event of Default, as defined by the Operating Agreement, constitutes an Event of Default under the Common Member Equity Pledge.

158.   As described more fully above in paragraphs 52, 57, 66-67, 86-88, *inter alia*, there are outstanding Events of Default under the Operating Agreement.

159.   Following an Event of Default, Bold St. Peters has certain rights and remedies under Section 8.1 of the Common Member Equity Pledge, including, inter alia, the right to (a) receive any and all amounts payable in respect to the Pledged Interests, including all equity distributions and Proceeds and right to exercise all

voting and equity rights relating to the Collateral, (b) to seek specific performance of, including declaratory and injunctive relief to enforce the terms of this Agreement, (c) to have the Court appoint a receiver for the Property and Collateral, and (d) the right to sell the pledged collateral at a public or private sale.

160.   Bold St. Peters has been harmed as a result of the Events of Default.

## **PRAYER FOR RELIEF**

WHEREFORE, Bold St. Peters respectfully requests that the Court:

a. issue a declaratory judgment pursuant to 6 *Del. C.* § 18-110 that: (i) Bold St. Peters is entitled to remove and replace Common Member as the Managing Member of the Company at any time; (ii) Bold St. Peters validly removed Common Member as the Managing Member of the Company on April 8, 2024; (iii) Bold St. Peters validly appointed itself as the Managing Member of the Company; and (iv) any action taken by Common Member on behalf of the Company as Managing Member following his removal on April 8, 2024, 2021 is void and of no legal effect;

b. issue a declaratory judgment that the TIC Restructure Transaction and related Nominee Agreement are void and of no force and effect and that the TIC Owners have no interest whatsoever in the Company, the Common Member or the Property, or, in the alternative, that the TIC Owner's rights, if any, are fully subordinate to the rights and economic interests of the PE Member;

c. enter a monetary judgment against Defendants in an amount to be determined at trial, plus pre- and post-judgment interest and attorneys' fees and costs to the fullest extent possible;

d. order specific performance of Common Member's payment to PE Member of the Full Redemption Distribution pursuant to, *inter alia*, Sections 15.2(a) and 5.4 of the Operating Agreement;

    e.  order specific performance in the form of an order permitting PE Member to transfer the Common Member membership interest to PE Member pursuant to Section 3.4 of the Common Member Equity Pledge; and

    f.  grant such other and further relief as the Court deems just and proper.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: */s/ Jesse L. Noa*

Jesse L. Noa (No. 5973)

Aaron L. Casagrande
(*pro hac vice* forthcoming)
ICE MILLER LLP
100 Light Street, Suite 1350
Baltimore, Maryland 21202

Charles R. Hallinan (No. 6814)
Hercules Plaza
1313 N. Market St.
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000

John D. French
(*pro hac vice* forthcoming)
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, Indiana 46282-0200
Telephone: (317) 236-2424

*Counsel for Plaintiff Bold St. Peters, L.P.*

Dated:  June 14, 2024

44

**EFiled: Jun 24 2024 04:53PM EDT**
**Transaction ID 73469811**
**Case No. 2024-0653-MTZ**

ORIGINAL

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BOLD ST. PETERS, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 2024-0653-MTZ |
| v. | ) | |
| | ) | <u>SUMMONS</u> |
| BOLD ON BOULEVARD LLC, RCG BOLD | ) | |
| GP LLC, BOLD APARTMENTS LLC, RCG | ) | |
| BOLD 1 LLC, RCG BOLD 2 LLC, RCG BOLD | ) | |
| 3 LLC, RCG BOLD 4 LLC, RCG BOLD 5 LLC, | ) | |
| and NACHMAN Y. TEREN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THE STATE OF DELAWARE**

**TO: SPECIAL PROCESS SERVER – Parcels, Inc.**

**YOU ARE COMMANDED:**

To summon the above-named defendant RCG Bold 1 LLC so that within 20 days after service hereof on defendant, exclusive of the day of service, defendant shall serve upon Charles R. Hallinan, Esquire, plaintiff's attorney, whose address is <u>Potter Anderson & Corroon LLP, 1313 N. Market Street, Hercules Plaza 6th Floor, Wilmington, DE 19801,</u> an answer to the Verified Complaint for Declaratory Relief, Damages, and Other Equitable Relief ("Complaint").

To serve upon the defendant a copy hereof and of the Complaint.

**TO THE ABOVE-NAMED RESPONDENT:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above an answer to the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Date: June 21, 2024

Case # 2024-0653-MTZ

Bold St. Peters, L.P.,

Plaintiff,

v.

Bold On Boulevard LLC, RCG Bold GP LLC,
Bold Apartments LLC, RCG Bold 1 LLC, RCG Bold 2 LLC,
RCG Bold 3 LLC, RCG Bold 4 LLC, RCG Bold 5 LLC, and
Nachman Y. Teren,

Defendants.

## **SUMMONS**

Please effectuate service pursuant to Rule 4 and 6 *Del. C*. § 18-105 upon:

**RCG Bold 1 LLC**
c/o Riverside Filings LLC
614 N. DuPont Highway, Suite 210
Dover, DE 19901

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER:
Parcels, Inc.

*Charles R. Hallinan, Esquire*
**Plaintiff's Attorney**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BOLD ST. PETERS, L.P.,

        Plaintiff,                    C.A. No. 2024-0653-

        v.

BOLD ON BOULEVARD LLC, RCG BOLD
GP LLC, BOLD APARTMENTS LLC, RCG
BOLD 1 LLC, RCG BOLD 2 LLC, RCG BOLD
3 LLC, RCG BOLD 4 LLC, RCG BOLD 5 LLC,
and NACHMAN Y. TEREN,

        Defendants,

## AFFIDAVIT OF SERVICE

I, Lori Millar, of the State of Delaware, County of Kent, being duly sworn, says
that on the 24th day of June 2024, I personally served an Summons, Complaint
with Exhibits, Supplemental Information Sheet, Verification, Motion To Expedite,
[Proposed] Order, Summons Instructions Letter and Prompt Assignment Letter by
serving the registered agent known as Riverside Filings LLC. Located at the
address of 614 N. Dupont Highway, Suite 210, Dover, DE  19901

BOLD ON BOULEVARD LLC

BOLD APARTMENTS LLC

RCG BOLD 1 LLC

RCG BOLD 2 LLC

RCG BOLD 3 LLC

RCG BOLD 4 LLC

RCG BOLD 5 LLC

Name of individual served: Mazie Kramer at 12:28 pm

Description of individual: Caucasian female, approximately 55-60 years old with blonde hair, 5'6 in height and 205 lbs.

Lori Millar
Parcels, Inc.
1111B South Governors Avenue
Dover, DE 19904

Subscribed and sworn before me
This 24th day of June 2024

Notary Public
My commission expires:

SHELLY RAE MILES
NOTARY PUBLIC
STATE OF DELAWARE
KENT COUNTY
20231113000003
My Commission Expires December 2, 2025

ORIGINAL

EFiled: Jun 24 2024 04:53PM EDT
Transaction ID 73469811
Case No. 2024-0653-MTZ

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |
|---|---|
| BOLD ST. PETERS, L.P., ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> BOLD ON BOULEVARD LLC, RCG BOLD ) <br> GP LLC, BOLD APARTMENTS LLC, RCG ) <br> BOLD 1 LLC, RCG BOLD 2 LLC, RCG BOLD ) <br> 3 LLC, RCG BOLD 4 LLC, RCG BOLD 5 LLC, ) <br> and NACHMAN Y. TEREN, ) <br><br> Defendants. ) | C.A. No. 2024-0653-MTZ <br><br> **<u>SUMMONS</u>** |

**THE STATE OF DELAWARE**

**TO: SPECIAL PROCESS SERVER – Parcels, Inc.**

**YOU ARE COMMANDED:**

To summon the above-named defendant RCG Bold 2 LLC so that within 20 days after service hereof on defendant, exclusive of the day of service, defendant shall serve upon Charles R. Hallinan, Esquire, plaintiff's attorney, whose address is <u>Potter Anderson & Corroon LLP, 1313 N. Market Street, Hercules Plaza 6th Floor, Wilmington, DE 19801,</u> an answer to the Verified Complaint for Declaratory Relief, Damages, and Other Equitable Relief ("Complaint").

To serve upon the defendant a copy hereof and of the Complaint.

**TO THE ABOVE-NAMED RESPONDENT:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above an answer to the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Date: June 21, 2024

_____

Case # 2024-0653-MTZ

Bold St. Peters, L.P.,

Plaintiff,

v.

Bold On Boulevard LLC, RCG Bold GP LLC,
Bold Apartments LLC, RCG Bold 1 LLC, RCG Bold 2 LLC,
RCG Bold 3 LLC, RCG Bold 4 LLC, RCG Bold 5 LLC, and
Nachman Y. Teren,

Defendants.


## SUMMONS

Please effectuate service pursuant to Rule 4 and 6 *Del. C.* § 18-105 upon:


**RCG Bold 2 LLC**
c/o Riverside Filings LLC
614 N. DuPont Highway, Suite 210
Dover, DE 19901

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER:
Parcels, Inc.


*Charles R. Hallinan, Esquire*
**Plaintiff's Attorney**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BOLD ST. PETERS, L.P.,

        Plaintiff,                 C.A. No. 2024-0653-

        v.

BOLD ON BOULEVARD LLC, RCG BOLD
GP LLC, BOLD APARTMENTS LLC, RCG
BOLD 1 LLC, RCG BOLD 2 LLC, RCG BOLD
3 LLC, RCG BOLD 4 LLC, RCG BOLD 5 LLC,
and NACHMAN Y. TEREN,

        Defendants,

## AFFIDAVIT OF SERVICE

I, Lori Millar, of the State of Delaware, County of Kent, being duly sworn, says
that on the 24th day of June 2024, I personally served an Summons, Complaint
with Exhibits, Supplemental Information Sheet, Verification, Motion To Expedite,
[Proposed] Order, Summons Instructions Letter and Prompt Assignment Letter by
serving the registered agent known as Riverside Filings LLC. Located at the
address of 614 N. Dupont Highway, Suite 210, Dover, DE  19901

BOLD ON BOULEVARD LLC

BOLD APARTMENTS LLC

RCG BOLD 1 LLC

RCG BOLD 2 LLC

RCG BOLD 3 LLC

RCG BOLD 4 LLC

RCG BOLD 5 LLC

Name of individual served: Mazie Kramer at 12:28 pm

Description of individual: Caucasian female, approximately 55-60 years old with blonde hair, 5'6 in height and 205 lbs.

Lori Millar
Parcels, Inc.
1111B South Governors Avenue
Dover, DE 19904

Subscribed and sworn before me
This 24th day of June 2024

Notary Public
My commission expires:

**SHELLY RAE MILES**
NOTARY PUBLIC
STATE OF DELAWARE
KENT COUNTY
20231113000003
My Commission Expires December 2, 2025

**ORIGINAL**

EFiled: Jun 24 2024 04:53PM EDT
Transaction ID 73469811
Case No. 2024-0653-MTZ

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BOLD ST. PETERS, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 2024-0653-MTZ |
| v. | ) | |
| | ) | <u>**SUMMONS**</u> |
| BOLD ON BOULEVARD LLC, RCG BOLD | ) | |
| GP LLC, BOLD APARTMENTS LLC, RCG | ) | |
| BOLD 1 LLC, RCG BOLD 2 LLC, RCG BOLD | ) | |
| 3 LLC, RCG BOLD 4 LLC, RCG BOLD 5 LLC, | ) | |
| and NACHMAN Y. TEREN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THE STATE OF DELAWARE**

**TO: SPECIAL PROCESS SERVER – Parcels, Inc.**

**YOU ARE COMMANDED:**

    To summon the above-named defendant RCG Bold 3 LLC so that within 20 days after service hereof on defendant, exclusive of the day of service, defendant shall serve upon Charles R. Hallinan, Esquire, plaintiff's attorney, whose address is <u>Potter Anderson & Corroon LLP, 1313 N. Market Street, Hercules Plaza 6th Floor, Wilmington, DE 19801,</u> an answer to the Verified Complaint for Declaratory Relief, Damages, and Other Equitable Relief ("Complaint").

    To serve upon the defendant a copy hereof and of the Complaint.

**TO THE ABOVE-NAMED RESPONDENT:**

    In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above an answer to the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Date: June 21, 2024

_____

Case # 2024-0653-MTZ

Bold St. Peters, L.P.,

Plaintiff,

v.

Bold On Boulevard LLC, RCG Bold GP LLC,
Bold Apartments LLC, RCG Bold 1 LLC, RCG Bold 2 LLC,
RCG Bold 3 LLC, RCG Bold 4 LLC, RCG Bold 5 LLC, and
Nachman Y. Teren,

Defendants.

## SUMMONS

Please effectuate service pursuant to Rule 4 and 6 *Del. C.* § 18-105 upon:

**RCG Bold 3 LLC**
c/o Riverside Filings LLC
614 N. DuPont Highway, Suite 210
Dover, DE 19901

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER:
Parcels, Inc.

*Charles R. Hallinan, Esquire*
**Plaintiff's Attorney**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BOLD ST. PETERS, L.P.,

      Plaintiff,                 C.A. No. 2024-0653-

      v.

BOLD ON BOULEVARD LLC, RCG BOLD
GP LLC, BOLD APARTMENTS LLC, RCG
BOLD 1 LLC, RCG BOLD 2 LLC, RCG BOLD
3 LLC, RCG BOLD 4 LLC, RCG BOLD 5 LLC,
and NACHMAN Y. TEREN,

      Defendants,

## AFFIDAVIT OF SERVICE

I, Lori Millar, of the State of Delaware, County of Kent, being duly sworn, says
that on the 24th day of June 2024, I personally served an Summons, Complaint
with Exhibits, Supplemental Information Sheet, Verification, Motion To Expedite,
[Proposed] Order, Summons Instructions Letter and Prompt Assignment Letter by
serving the registered agent known as Riverside Filings LLC. Located at the
address of 614 N. Dupont Highway, Suite 210, Dover, DE  19901

BOLD ON BOULEVARD LLC

BOLD APARTMENTS LLC

RCG BOLD 1 LLC

RCG BOLD 2 LLC

RCG BOLD 3 LLC

RCG BOLD 4 LLC

RCG BOLD 5 LLC

Name of individual served: Mazie Kramer at 12:28 pm

Description of individual: Caucasian female, approximately 55-60 years old with blonde hair, 5'6 in height and 205 lbs.

Lori Millar
Parcels, Inc.
1111B South Governors Avenue
Dover, DE 19904

Subscribed and sworn before me
This 24th day of June 2024

Notary Public
My commission expires:

SHELLY RAE MILES
NOTARY PUBLIC
STATE OF DELAWARE
KENT COUNTY
20231113000003
My Commission Expires December 2, 2025

ORIGINAL

EFiled: Jun 24 2024 04:53PM EDT
Transaction ID 73469811
Case No. 2024-0653-MTZ

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| BOLD ST. PETERS, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 2024-0653-MTZ |
| v. | ) | |
| | ) | <u>SUMMONS</u> |
| BOLD ON BOULEVARD LLC, RCG BOLD | ) | |
| GP LLC, BOLD APARTMENTS LLC, RCG | ) | |
| BOLD 1 LLC, RCG BOLD 2 LLC, RCG BOLD | ) | |
| 3 LLC, RCG BOLD 4 LLC, RCG BOLD 5 LLC, | ) | |
| and NACHMAN Y. TEREN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THE STATE OF DELAWARE**

**TO: SPECIAL PROCESS SERVER – Parcels, Inc.**

**YOU ARE COMMANDED:**

To summon the above-named defendant RCG Bold 4 LLC so that within 20 days after service hereof on defendant, exclusive of the day of service, defendant shall serve upon Charles R. Hallinan, Esquire, plaintiff's attorney, whose address is <u>Potter Anderson & Corroon LLP, 1313 N. Market Street, Hercules Plaza 6th Floor, Wilmington, DE 19801,</u> an answer to the Verified Complaint for Declaratory Relief, Damages, and Other Equitable Relief ("Complaint").

To serve upon the defendant a copy hereof and of the Complaint.

**TO THE ABOVE-NAMED RESPONDENT:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above an answer to the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Date: June 21, 2024

_____

Case # 2024-0653-MTZ

Bold St. Peters, L.P.,

Plaintiff,

v.

Bold On Boulevard LLC, RCG Bold GP LLC,
Bold Apartments LLC, RCG Bold 1 LLC, RCG Bold 2 LLC,
RCG Bold 3 LLC, RCG Bold 4 LLC, RCG Bold 5 LLC, and
Nachman Y. Teren,

Defendants.


## SUMMONS

Please effectuate service pursuant to Rule 4 and 6 *Del. C.* § 18-105 upon:


**RCG Bold 4 LLC**
c/o Riverside Filings LLC
614 N. DuPont Highway, Suite 210
Dover, DE 19901

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER:
Parcels, Inc.


*Charles R. Hallinan, Esquire*
**Plaintiff's Attorney**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BOLD ST. PETERS, L.P.,

      Plaintiff,               C.A. No. 2024-0653-

      v.

BOLD ON BOULEVARD LLC, RCG BOLD
GP LLC, BOLD APARTMENTS LLC, RCG
BOLD 1 LLC, RCG BOLD 2 LLC, RCG BOLD
3 LLC, RCG BOLD 4 LLC, RCG BOLD 5 LLC,
and NACHMAN Y. TEREN,

      Defendants,

## AFFIDAVIT OF SERVICE

I, Lori Millar, of the State of Delaware, County of Kent, being duly sworn, says
that on the 24th day of June 2024, I personally served an Summons, Complaint
with Exhibits, Supplemental Information Sheet, Verification, Motion To Expedite,
[Proposed] Order, Summons Instructions Letter and Prompt Assignment Letter by
serving the registered agent known as Riverside Filings LLC. Located at the
address of 614 N. Dupont Highway, Suite 210, Dover, DE  19901

BOLD ON BOULEVARD LLC

BOLD APARTMENTS LLC

RCG BOLD 1 LLC

RCG BOLD 2 LLC

RCG BOLD 3 LLC

RCG BOLD 4 LLC

RCG BOLD 5 LLC

Name of individual served: Mazie Kramer at 12:28 pm

Description of individual: Caucasian female, approximately 55-60 years old with blonde hair, 5'6 in height and 205 lbs.

Lori Millar
Parcels, Inc.
1111B South Governors Avenue
Dover, DE 19904

Subscribed and sworn before me
This 24th day of June 2024

Notary Public
My commission expires:

SHELLY RAE MILES
NOTARY PUBLIC
STATE OF DELAWARE
KENT COUNTY
20231113000003
My Commission Expires December 2, 2025

**ORIGINAL**

EFiled: Jun 24 2024 04:53PM EDT
Transaction ID 73469811
Case No. 2024-0653-MTZ

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| BOLD ST. PETERS, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 2024-0653-MTZ |
| v. | ) | |
| | ) | <u>SUMMONS</u> |
| BOLD ON BOULEVARD LLC, RCG BOLD | ) | |
| GP LLC, BOLD APARTMENTS LLC, RCG | ) | |
| BOLD 1 LLC, RCG BOLD 2 LLC, RCG BOLD | ) | |
| 3 LLC, RCG BOLD 4 LLC, RCG BOLD 5 LLC, | ) | |
| and NACHMAN Y. TEREN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**THE STATE OF DELAWARE**

**TO: SPECIAL PROCESS SERVER – Parcels, Inc.**

**YOU ARE COMMANDED:**

To summon the above-named defendant RCG Bold 5 LLC so that within 20 days after service hereof on defendant, exclusive of the day of service, defendant shall serve upon Charles R. Hallinan, Esquire, plaintiff's attorney, whose address is <u>Potter Anderson & Corroon LLP, 1313 N. Market Street, Hercules Plaza 6th Floor, Wilmington, DE 19801</u>, an answer to the Verified Complaint for Declaratory Relief, Damages, and Other Equitable Relief ("Complaint").

To serve upon the defendant a copy hereof and of the Complaint.

**TO THE ABOVE-NAMED RESPONDENT:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above an answer to the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Date: June 21, 2024

Case # 2024-0653-MTZ

Bold St. Peters, L.P.,

Plaintiff,

v.

Bold On Boulevard LLC, RCG Bold GP LLC,
Bold Apartments LLC, RCG Bold 1 LLC, RCG Bold 2 LLC,
RCG Bold 3 LLC, RCG Bold 4 LLC, RCG Bold 5 LLC, and
Nachman Y. Teren,

Defendants.


## SUMMONS

Please effectuate service pursuant to Rule 4 and 6 *Del. C.* § 18-105 upon:


**RCG Bold 5 LLC**
c/o Riverside Filings LLC
614 N. DuPont Highway, Suite 210
Dover, DE 19901

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER:
Parcels, Inc.


*Charles R. Hallinan, Esquire*
**Plaintiff's Attorney**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BOLD ST. PETERS, L.P.,

        Plaintiff,                   C.A. No. 2024-0653-

        v.

BOLD ON BOULEVARD LLC, RCG BOLD
GP LLC, BOLD APARTMENTS LLC, RCG
BOLD 1 LLC, RCG BOLD 2 LLC, RCG BOLD
3 LLC, RCG BOLD 4 LLC, RCG BOLD 5 LLC,
and NACHMAN Y. TEREN,

        Defendants,

## AFFIDAVIT OF SERVICE

I, Lori Millar, of the State of Delaware, County of Kent, being duly sworn, says
that on the 24th day of June 2024, I personally served an Summons, Complaint
with Exhibits, Supplemental Information Sheet, Verification, Motion To Expedite,
[Proposed] Order, Summons Instructions Letter and Prompt Assignment Letter by
serving the registered agent known as Riverside Filings LLC. Located at the
address of 614 N. Dupont Highway, Suite 210, Dover, DE  19901

BOLD ON BOULEVARD LLC

BOLD APARTMENTS LLC

RCG BOLD 1 LLC

RCG BOLD 2 LLC

RCG BOLD 3 LLC

RCG BOLD 4 LLC

RCG BOLD 5 LLC

Name of individual served: Mazie Kramer at 12:28 pm

Description of individual: Caucasian female, approximately 55-60 years old with blonde hair, 5'6 in height and 205 lbs.

Lori Millar
Parcels, Inc.
1111B South Governors Avenue
Dover, DE 19904

Subscribed and sworn before me
This 24th day of June 2024

Notary Public
My commission expires:

SHELLY RAE MILES
NOTARY PUBLIC
STATE OF DELAWARE
KENT COUNTY
20231113000003
My Commission Expires December 2, 2025

ORIGINAL

EFiled: Jun 24 2024 04:53PM EDT
Transaction ID 73469811
Case No. 2024-0653-MTZ

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| BOLD ST. PETERS, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 2024-0653-MTZ |
| v. | ) | |
| | ) | **SUMMONS** |
| BOLD ON BOULEVARD LLC, RCG BOLD | ) | |
| GP LLC, BOLD APARTMENTS LLC, RCG | ) | |
| BOLD 1 LLC, RCG BOLD 2 LLC, RCG BOLD | ) | |
| 3 LLC, RCG BOLD 4 LLC, RCG BOLD 5 LLC, | ) | |
| and NACHMAN Y. TEREN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**THE STATE OF DELAWARE**

**TO: SPECIAL PROCESS SERVER – Parcels, Inc.**

**YOU ARE COMMANDED:**

To summon the above-named defendant Bold Apartments LLC so that within 20 days after service hereof on defendant, exclusive of the day of service, defendant shall serve upon Charles R. Hallinan, Esquire, plaintiff's attorney, whose address is <u>Potter Anderson & Corroon LLP, 1313 N. Market Street, Hercules Plaza 6th Floor, Wilmington, DE 19801,</u> an answer to the Verified Complaint for Declaratory Relief, Damages, and Other Equitable Relief ("Complaint").

To serve upon the defendant a copy hereof and of the Complaint.

**TO THE ABOVE-NAMED RESPONDENT:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above an answer to the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Date: June 21, 2024

_Tamara N Burton_
_____

Case # 2024-0653-MTZ

Bold St. Peters, L.P.,

Plaintiff,

v.

Bold On Boulevard LLC, RCG Bold GP LLC,
Bold Apartments LLC, RCG Bold 1 LLC, RCG Bold 2 LLC,
RCG Bold 3 LLC, RCG Bold 4 LLC, RCG Bold 5 LLC, and
Nachman Y. Teren,

Defendants.

### SUMMONS

Please effectuate service pursuant to Rule 4 and 6 *Del. C.* § 18-105 upon:

**Bold Apartments LLC**
c/o Riverside Filings LLC
614 N. DuPont Highway, Suite 210
Dover, DE 19901

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER:
Parcels, Inc.

*Charles R. Hallinan, Esquire*
**Plaintiff's Attorney**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BOLD ST. PETERS, L.P.,

    Plaintiff,      C.A. No. 2024-0653-

    v.

BOLD ON BOULEVARD LLC, RCG BOLD
GP LLC, BOLD APARTMENTS LLC, RCG
BOLD 1 LLC, RCG BOLD 2 LLC, RCG BOLD
3 LLC, RCG BOLD 4 LLC, RCG BOLD 5 LLC,
and NACHMAN Y. TEREN,

    Defendants,

## AFFIDAVIT OF SERVICE

I, Lori Millar, of the State of Delaware, County of Kent, being duly sworn, says
that on the 24th day of June 2024, I personally served an Summons, Complaint
with Exhibits, Supplemental Information Sheet, Verification, Motion To Expedite,
[Proposed] Order, Summons Instructions Letter and Prompt Assignment Letter by
serving the registered agent known as Riverside Filings LLC. Located at the
address of 614 N. Dupont Highway, Suite 210, Dover, DE  19901

BOLD ON BOULEVARD LLC

BOLD APARTMENTS LLC

RCG BOLD 1 LLC

RCG BOLD 2 LLC

RCG BOLD 3 LLC

RCG BOLD 4 LLC

RCG BOLD 5 LLC

Name of individual served: Mazie Kramer at 12:28 pm

Description of individual: Caucasian female, approximately 55-60 years old with blonde hair, 5'6 in height and 205 lbs.

Lori Millar
Parcels, Inc.
1111B South Governors Avenue
Dover, DE 19904

Subscribed and sworn before me
This 24th day of June 2024

Notary Public
My commission expires:

SHELLY RAE MILES
NOTARY PUBLIC
STATE OF DELAWARE
KENT COUNTY
20231113000003
My Commission Expires December 2, 2025

**ORIGINAL**

EFiled: Jun 24 2024 04:53PM EDT
Transaction ID 73469811
Case No. 2024-0653-MTZ

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| BOLD ST. PETERS, L.P., )<br><br>Plaintiff, )<br><br>v. )<br><br>BOLD ON BOULEVARD LLC, RCG BOLD )<br>GP LLC, BOLD APARTMENTS LLC, RCG )<br>BOLD 1 LLC, RCG BOLD 2 LLC, RCG BOLD )<br>3 LLC, RCG BOLD 4 LLC, RCG BOLD 5 LLC, )<br>and NACHMAN Y. TEREN, )<br><br>Defendants. )<br> ) | C.A. No. 2024-0653-MTZ<br><br>**<u>SUMMONS</u>** |

**THE STATE OF DELAWARE**

**TO: SPECIAL PROCESS SERVER – Parcels, Inc.**

**YOU ARE COMMANDED:**

To summon the above-named defendant Bold On Boulevard LLC so that within 20 days after service hereof on defendant, exclusive of the day of service, defendant shall serve upon Charles R. Hallinan, Esquire, plaintiff's attorney, whose address is <u>Potter Anderson & Corroon LLP, 1313 N. Market Street, Hercules Plaza 6th Floor, Wilmington, DE 19801,</u> an answer to the Verified Complaint for Declaratory Relief, Damages, and Other Equitable Relief ("Complaint").

To serve upon the defendant a copy hereof and of the Complaint.

**TO THE ABOVE-NAMED RESPONDENT:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above an answer to the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Date: June 21, 2024

_Tamara N Burton_
_____

Case # 2024-0653-MTZ

Bold St. Peters, L.P.,

Plaintiff,

v.

Bold On Boulevard LLC, RCG Bold GP LLC,
Bold Apartments LLC, RCG Bold 1 LLC, RCG Bold 2 LLC,
RCG Bold 3 LLC, RCG Bold 4 LLC, RCG Bold 5 LLC, and
Nachman Y. Teren,

Defendants.

## **SUMMONS**

Please effectuate service pursuant to Rule 4 and 6 *Del. C.* § 18-105 upon:

**Bold On Boulevard LLC**
c/o Riverside Filings LLC
614 N. DuPont Highway, Suite 210
Dover, DE 19901

SERVICE TO BE COMPLETED BY SPECIAL PROCESS SERVER:
Parcels, Inc.

*Charles R. Hallinan, Esquire*
**Plaintiff's Attorney**

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

BOLD ST. PETERS, L.P.,

        Plaintiff,                C.A. No. 2024-0653-

        v.

BOLD ON BOULEVARD LLC, RCG BOLD
GP LLC, BOLD APARTMENTS LLC, RCG
BOLD 1 LLC, RCG BOLD 2 LLC, RCG BOLD
3 LLC, RCG BOLD 4 LLC, RCG BOLD 5 LLC,
and NACHMAN Y. TEREN,

        Defendants,

## AFFIDAVIT OF SERVICE

I, Lori Millar, of the State of Delaware, County of Kent, being duly sworn, says
that on the 24th day of June 2024, I personally served an Summons, Complaint
with Exhibits, Supplemental Information Sheet, Verification, Motion To Expedite,
[Proposed] Order, Summons Instructions Letter and Prompt Assignment Letter by
serving the registered agent known as Riverside Filings LLC. Located at the
address of 614 N. Dupont Highway, Suite 210, Dover, DE  19901

BOLD ON BOULEVARD LLC

BOLD APARTMENTS LLC

RCG BOLD 1 LLC

RCG BOLD 2 LLC

RCG BOLD 3 LLC

RCG BOLD 4 LLC

RCG BOLD 5 LLC

Name of individual served: Mazie Kramer at 12:28 pm

Description of individual: Caucasian female, approximately 55-60 years old with blonde hair, 5'6 in height and 205 lbs.

Lori Millar
Parcels, Inc.
1111B South Governors Avenue
Dover, DE 19904

Subscribed and sworn before me
This 24th day of June 2024

Notary Public
My commission expires:

SHELLY RAE MILES
NOTARY PUBLIC
STATE OF DELAWARE
KENT COUNTY
20231113000003
My Commission Expires December 2, 2025

**GRANTED IN PART**

EFiled: Jul 02 2024 03:25PM EDT
Transaction ID 73539997
Case No. 2024-0653-MTZ

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| BOLD ST. PETERS, L.P., | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. _____ |
| v. | ) |
| | ) |
| BOLD ON BOULEVARD LLC, RCG | ) |
| BOLD GP LLC, BOLD APARTMENTS | ) |
| LLC, RCG BOLD 1 LLC, RCG BOLD 2 | ) |
| LLC, RCG BOLD 3 LLC, RCG BOLD 4 | ) |
| LLC, RCG BOLD 5 LLC, and | ) |
| NACHMAN Y. TEREN, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### [PROPOSED] ORDER GRANTING
### PLAINTIFF'S MOTION TO EXPEDITE

The Court having considered Plaintiff's Motion to Expedite (the "<u>Motion</u>"), and having found good cause therefor,

IT IS HEREBY ORDERED this _____ day of _____, 20__, that:

1.    Plaintiff's Motion is **GRANTED**.

2.    This action, as to Count I of Plaintiff's Verified Complaint for Declaratory Relief, Damages and Other Equitable Relief, shall proceed on an expedited basis.

3.    The parties shall meet and confer, and confer with Court staff, regarding an expedited schedule in this matter, and, within seven (7) calendar days, present the

1

Court with a proposed schedule or, if the parties cannot agree to a schedule, separate proposed schedules culminating in a trial on the merits within sixty (60) days of this order.

_____
Chancellor/Vice Chancellor

| | |
|---|---|
| **This document constitutes a ruling of the court and should be treated as such.** | |
| **Court:** | DE Court of Chancery Civil Action |
| **Judge:** | Morgan Zurn |
| **Alternate Judge:** | Unassigned |
| **File & Serve Transaction ID:** | 73393333 |
| **Current Date:** | Jul 02, 2024 |
| **Case Number:** | 2024-0653-MTZ |
| **Case Name:** | Bold St. Peters, L.P. v. Bold on Boulevard LLC, et al. |
| **Court Authorizer:** | Morgan Zurn |

**Court Authorizer Comments:**

Counsel shall contact chambers to obtain a trial date in approximately 90 days. Counsel shall confer and submit a stipulated scheduling order, which shall omit dispositive motion practice. Tomorrow's hearing is CANCELLED.

**/s/ Judge Morgan Zurn**

**GRANTED WITH MODIFICATIONS**

EFiled: Jul 11 2024 11:40AM EDT
Transaction ID 73528446
Case No. 2024-0653-MTZ

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| BOLD ST. PETERS, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 2024-0653-MTZ |
| v. | ) | |
| | ) | |
| BOLD ON BOULEVARD LLC, RCG | ) | |
| BOLD GP LLC, BOLD APARTMENTS | ) | |
| LLC, RCG BOLD 1 LLC, RCG BOLD 2 | ) | |
| LLC, RCG BOLD 3 LLC, RCG BOLD 4 | ) | |
| LLC, RCG BOLD 5 LLC, and | ) | |
| NACHMAN Y. TEREN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## STIPULATION AND [PROPOSED] ORDER
## GOVERNING CASE SCHEDULE

WHEREAS, on June 14, 2024, Plaintiff Bold St. Peters, L.P. ("Plaintiff") filed a Verified Complaint for Declaratory Relief, Damages and Other Equitable Relief against Defendants Bold on Boulevard LLC, RCG Bold GP LLC, Bold Apartments LLC, RCG Bold 1 LLC, RCG Bold 2 LLC, RCG Bold 3 LLC, RCG Bold 4 LLC, RCG Bold 4 LLC, RCG Bold 5 LLC, and Nachman Y. Teren (together, "Defendants"), as well as a Motion to Expedite (the "Motion");

WHEREAS, on July 2, 2024, the Court having considered the Motion and having partially granted the same;

IT IS HEREBY STIPULATED AND AGREED, by the parties, by and through their undersigned counsel, subject to the approval of the Court, as follows:

1.  The following schedule shall govern expedited proceedings in this action.

| a. | Service of answer to the Complaint | July 15, 2024 |
|---|---|---|
| b. | Parties to Serve Initial Interrogatories, Requests for Production, and Requests for Admission | July 16, 2024, by 5:00 p.m. ET |
| c. | Parties to respond to Interrogatories, Requests for Production and Initial Requests for Admission | Ten (10) calendar days after service, by 5:00 p.m. ET on the applicable deadline |
| d. | Parties meet and confer regarding document production protocol | July 17, 2024, by 5:00 p.m. ET |
| e. | Deadline to serve additional Interrogatories, Requests for Production, and Requests for Admission[1] | July 28, 2024, by 5:00 p.m. ET |
| f. | Substantial completion of document production | August 8, 2024 |
| g. | Exchange of privilege logs | August 9, 2024, by 5:00 p.m. ET |
| h. | Completion of all discovery, including depositions (except for any fact discovery | September 6, 2024 |

---

[1] Requests for Production served after July 16, 2024 shall be narrowly tailored and limited to issues and matters that the parties were unable to ascertain in good faith prior to the July 16, 2024 written discovery deadline.  Moreover, the good faith inability of a party to complete document productions in response to any such supplemental requests for the production of documents prior to the expiration of the substantial completion deadline provided in Paragraph 1(f) shall not be the basis for seeking an extension of any other deadline set forth herein.

|  | subject to a motion to compel or motion for protective order pending on this date) |  |
|---|---|---|
| i. | Plaintiff shall provide initial draft of Pre-Trial Order to Defendants, including a proposed joint exhibit list | September 13, 2024 |
| j. | Plaintiff shall file its Pre-Trial Opening Brief | September 13, 2024, by 5:00 p.m. ET |
| k. | Defendants shall provide markup of draft Pre-Trial Order, including non-duplicative additions to the proposed joint exhibit list | September 20, 2024 |
| l. | Defendants shall file their Pre-Trial Answering Brief | September 20, 2024, by 5:00 p.m. ET |
| m. | Plaintiff shall file its Pre-Trial Reply Brief | September 27, 2024, by 5:00 p.m. ET |
| n. | Parties' Joint Submission of Proposed Pre-Trial Order, including joint trial exhibit list, objections to trial exhibits, final trial witness list | October 1, 2024, by 5:00 p.m. ET |
| o. | Pre-Trial teleconference (Plaintiff's counsel will circulate dial-in information to the parties and the Court a few days prior to the pre-trial conference) | October 3, 2024 at __:__ __.m. |
| p. | Trial (Wilmington, Delaware) | October 7 & 8, 2024 at __:__ __.m. |

2.     The parties agree to meet and confer promptly regarding arrangements for any discovery to be taken from the parties' agents and advisors.

3

3.     Written discovery shall be limited to 15 interrogatories, 20 requests for production, and 35 requests for admission.

4.     Prior to production, the parties shall use their best efforts to de-duplicate any electronic material collected (including identical material transmitted between or among multiple custodians). All documents produced shall be produced in electronic form, in accordance with specifications agreed upon by the parties.

5.     Depositions shall be taken on reasonable notice, and the parties shall work together in good faith on scheduling of depositions. Each side shall be permitted to take up to 5 depositions (including depositions of third parties), with a maximum total of 20 hours of deposition time per side. Notwithstanding the foregoing, and to the extent the Court requires live testimony, any witness designated by a party to testify live at the preliminary injunction hearing shall be made promptly available for deposition.

6.     The parties shall not be required to list on their respective privilege logs documents evidencing communications only between or among counsel, including outside counsel and in-house counsel for the parties. In the event the parties produce partially redacted documents, they may dispense with logging such documents where the face of the document provides the factual information that would otherwise appear on a privilege log, but shall promptly provide a privilege log for any redacted documents upon request by the non-producing side.

7.     The parties may amend the dates set forth above in subparagraphs 1(a)-(i) of this Order by written agreement, without Court approval. All other deadlines, the pretrial conference date, and the trial date may be amended only by order of the Court.

8.     There will be no post-trial briefing or post-trial argument unless requested or ordered by the Court.

POTTER ANDERSON &
CORROON LLP

K&L GATES LLP

*/s/ Charles R. Hallinan*
Jesse L. Noa (No. 5973)
Charles R. Hallinan (No. 6814)
1313 North Market Street, 6th Floor
Wilmington, DE 19801
(302) 984-6000

*/s/ Michael J. Vail*
Steven L. Caponi (No. 3484)
Michael J. Vail (No. 6994)
600 N. King Street, Suite 901
Wilmington, DE 19801
(302) 416-7000

Aaron L. Casagrande
ICE MILLER LLP
100 Light Street, Suite 1350
Baltimore, Maryland 21202
(410) 951-5870

John D. French
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282
(317) 236-2424

*Attorneys for Plaintiff Bold St.
Peters, L.P.*

*Attorneys for Defendants Bold on
Boulevard LLC, RCG Bold GP LLC,
Bold Apartments LLC, RCG Bold 1
LLC, RCG Bold 2 LLC, RCG Bold 3
LLC, RCG Bold 4 LLC, RCG Bold 4
LLC, RCG Bold 5 LLC, and Nachman
Y. Teren*

Dated: July 10, 2024

SO ORDERED this _____ day of _____, 2024

_____
Vice Chancellor Morgan T. Zurn

6

This document constitutes a ruling of the court and should be treated as such.

|  |  |
|---|---|
| **Court:** | DE Court of Chancery Civil Action |
| **Judge:** | Morgan Zurn |
| **File & Serve Transaction ID:** | 73624912 |
| **Current Date:** | Jul 11, 2024 |
| **Case Number:** | 2024-0653-MTZ |
| **Case Name:** | Bold St. Peters, L.P. v. Bold on Boulevard LLC, et al. |
| **Court Authorizer:** | Morgan Zurn |

**Court Authorizer Comments:**

1. o. The telephonic pre-trial conference will be held on Thursday, October 3, 2024 at 11 a.m.

1. p. Trial will begin at 9:15 a.m. each day.

- The parties shall work together to create a single set of trial exhibits without duplication, organized chronologically to the extent practicable, and cite the joint exhibits in their pre-trial briefs.
- In advance of trial, counsel shall submit to Chambers two (2) searchable flash drives of the trial exhibits, as well as one (1) set of paper copies for the Vice Chancellor. Please note this is in addition to any copies required by the Register in Chancery, or any flash drives requested by the court reporter.

**/s/ Judge Morgan Zurn**

# Exhibit B

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

BOLD ST. PETERS, L.P.

        Plaintiff,

    v.

BOLD ON BOULEVARD LLC, RCG
BOLD GP LLC, BOLD APARTMENTS
LLC, RCG BOLD 1 LLC, RCG BOLD 2
LLC, RCG BOLD 3 LLC, RCG BOLD 4
LLC, RCG BOLD 5 LLC, and
NACHMAN Y. TEREN,

        Defendants.

C.A. No. 2024-0653-MTZ

## NOTICE OF FILING OF REMOVAL

PLEASE TAKE NOTICE that on July 15, 2024, Defendants RCG Bold GP

LLC, Bold Apartments, LLC, RCG Bold 1 LLC, RCG Bold 2 LLC, RCG Bold 3

LLC, RCG Bold 4 LLC, RCG Bold 5 LLC, and Nachman Y. Teren (the "Removing

Defendants"), filed a notice of removal of the above-styled action in the United

States District Court of the District of Delaware. A true and correct copy of that

Notice if attached hereto as Exhibit A.

Dated: July 15, 2024

**K&L GATES LLP**

*/s/ Steven L. Caponi*
Steven L. Caponi (No. 3484)
Michael J. Vail (No. 6994)
600 N. King Street, Suite 901
Wilmington, DE 19801
Phone: (302) 416-7000
steven.caponi@klgates.com
michael.vail@klgates.com

**BELL NUNNALLY & MARTIN LLP**
Kartik R. Singapura
Mason G. Jones
Nathan Cox
2323 Ross Avenue, Suite 1900
Dallas, TX 75201
Phone: (214) 740-1400
ksingapura@bellnunnally.com
mjones@bellnunnally.com
ncox@bellnunnally.com

*Counsel for Defendants*